O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUJUAN MAURICIO FERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CYNTHIA TAMPKINS *et al.*<br><br>Defendants. | Case No. 5:19-cv-01390-VAP (MAA)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

**I.   INTRODUCTION**

On July 29, 2019, Plaintiff DuJuan Mauricio Fernandez ("Plaintiff"), an inmate at California Substance Abuse and Treatment Facility and Prison, proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.) On November 15, 2019, the Court screened and dismissed the Complaint with leave to file an amended Complaint. (Order Dismiss Compl., ECF No. 8.) Plaintiff filed a First Amended Complaint on December 10, 2019. ("FAC," ECF No. 9.)

The Court has screened the FAC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, the FAC is **DISMISSED**

**WITH LEAVE TO AMEND**. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Second Amended Complaint, or (2) advise the Court that Plaintiff does not intend to file a Second Amended Complaint.

## II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

The FAC is filed against: (1) Cynthia Tampkins, Warden of California Rehabilitation Center ("CRC"); (2) Steve Sasaki, Principal of Vista Del Rio Adult School (the "School"); (3) Tracey Roberson, Teacher of classroom 604A in the School; and (4) R. Lunday, Fire Captain of the CRC Institutional Fire Department (each, a "Defendant" and collectively, "Defendants"). (FAC 3–4.)[1] Each Defendant is sued in his or her individual capacity. (*Id.*)

The FAC and attached exhibits[2] contain the following allegations and claims: On March 22, 2018, Plaintiff was assigned to classroom 604-A of the School. (*Id.* at 7.) Plaintiff signed out to use the restroom. (*Id.*) Preceding his departure, there was a large puddle of water on the floor which Plaintiff attempted to go around. (*Id.*) Plaintiff slipped and landed on his back, striking his head and tail bone on the floor and losing consciousness for several minutes. (*Id.*) When Plaintiff regained consciousness, the Nurse, Ms. Halstead, Officer Trotter, Devilla, and Defendant Fire Captain Lundy were standing over and/or around Plaintiff. (*Id.*)

The source of the large water puddle came from a leak in the ceiling, which had been an ongoing safety issue. (*Id.*) Objective evidence demonstrated seven to ten missing tiles from the ceiling over the standing puddle, which had been damaged for two years. (*Id.*) Each Defendant had personal knowledge of the condition of the property and failed to take necessary action to prevent Plaintiff's injury. (*Id.* at 5.)

---

[1] Citations to pages in docketed documents reference those generated by CM/ECF.

[2] Documents attached to a complaint are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Repeated requests for repairs had been made to Principal Sasaki, among others, who ignored those requests. (*Id*. at 7.) The Warden, Fire Captain, Plant Operations, and several other Administrators and Custodial Officials were aware that a significant risk of injury to prisoners existed over a two-year period without taking action. (*Id*.)

Defendant Tampkins, as the Warden of CRC, was responsible for the overall care, health, safety, education, and development of each prisoner confined at CRC, including Plaintiff. (*Id*. at 5.) Defendant Tampkins personally was advised that there existed a dangerous condition of state property, but failed to assure the dangerous condition was corrected over a two-year period, despite numerous written and verbal complaints, work orders, and notices submitted by the inmate population and other staff. (*Id*.)

Defendant Lundy was the Chief of the Institutional Fire Department responsible for examination of each building and conditions as they relate to prisoner occupation, including, but not limited to, fire hazards, structural damage posing a significant risk of harm to all patrons, room occupancy, and any objective risk of harm. (*Id*.) Defendant Lundy failed to assure the damages to the ceiling were properly conveyed to "Plant Operations" to prevent a significant risk of harm to the inmate population participating in the programs, activities and services provided by the CDCR. (*Id*. at 5–6.)

Defendant Sasaki, as the Principal over all teachers at the School, was responsible for assuring all CRC prisoners attending the School were provided with a safe environment while participating in the programs, services, and activities provided by the CDCR and CRC. (*Id*. at 6.) Defendant Sasaki was aware of the damages to the ceiling at the School, but failed to assure that all inmates were provided a safe environment, as demonstrated by two years of continuous disrepair. (*Id*.)

Defendant Roberson was the teacher of the class where Plaintiff was assigned and the ceiling was damaged. (*Id*.) Defendant Roberson allowed inmates access to

an area known to pose a significant risk of serious physical injury despite personal knowledge of a water puddle continuing to increase, and without notifying janitorial staff to place warning cones. (*Id.*) Defendant Roberson was aware that several complaints had been filed regarding the risk of harm posed by the damaged ceiling and leaking water. (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims: (1) negligence; (2) deliberate indifference; (3) failure to protect from substantial risk of harm; (4) the integrity of the building, including pursuant to Government Code Sections 815 and 830; and (5) failure to properly train. (*Id.* at 5.) Plaintiff seeks: (a) monetary damages of $400,000 but no less than $2,500 per act and/or omission; (b) punitive damages; (c) injunctive relief; (d) attorney fees and costs; and (e) such other relief as the Court deems just, proper and equitable. (*Id.* at 8.)

### III. LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). "Dismissal under Rule 12(b)(6) is

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), "which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)). In reviewing a motion to dismiss, the court will accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Park*, 851 F.3d at 918 (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.*

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt.

*Wilhelm*, 680 F.3d at 1121. "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (quoting *Shucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

## IV. DISCUSSION

### A. The Complaint Does Not State a Section 1983 Claim.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the FAC alleges that Plaintiff slipped on a large puddle of water in classroom 604-A of the School, which resulted from an ongoing leak in the ceiling. (FAC 5.) Plaintiff asserts claims for negligence, deliberate indifference, failure to protect from substantial risk of harm, the integrity of the building under Government Code Sections 815 and 830, and failure to properly train. (*Id.*) Based on the allegations and claims asserted in the FAC, the only potential federal claim under

6

Section 1983 is for violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Because Plaintiff has re-filed the same allegations in the Complaint but with different claims asserted, for the avoidance of doubt the Court specifically states that the Eighth Amendment would encompass Plaintiff's claims for deliberate indifference, failure to protect from substantial risk of harm, and failure to properly train. Plaintiff's remaining claims—negligence and the integrity of the building under Government Code Sections 815 and 830—are state law claims.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to 'evolving standards of decency that mark the progress of a maturing society.'" *Morgan*, 465 F.3d at 1045 (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

A prison official violates the Eighth Amendment when two requirements are met. <u>First</u>, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237,

1246 (9th Cir. 1982)).  Second, subjectively, the prison official acted with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, the FAC alleges that there were seven to ten missing tiles from the ceiling of the Room for two years, which caused a large water puddle. (FAC 7.) However, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). "Many courts have concluded that poorly maintained surfaces, wet floors, and leaky roofs do not generally pose a substantial risk of serious harm, and are instead claims fundamentally sounding in negligence—which is insufficient to violate the Eighth Amendment as a matter of law." *Miranda v. Madden*, No.: 3:19-cv-01605-LAB-RBM, 2019 U.S. Dist. LEXIS 192188, at *11, 2019 WL 5727444, at *5 (S.D. Cal. Nov. 4, 2019) (quotations omitted); *see also Collins v. Dir. of C.D.C.*, No. NO. 1:04-CV-5304-REC-SMS-P, 2005 U.S. Dist. LEXIS 266181, at *6 (E.D. Cal. Nov. 3, 2005) ("The allegation that the roofed leaked is insufficient to demonstrate a condition so extreme that it rose to the level of an Eighth Amendment violation."). "Courts have reached this conclusion, even where the hazard has existed, and been known to prison officials, for years and where the prisoner was required to use the dangerous location . . . ." *Pauley v. California*, No. 2:18-cv-2595 KJN P, 2018 U.S. Dist. LEXIS 193388, at *11, 2018 WL 5920780, at *4 (E.D. Cal. Nov. 13, 2018) (collecting cases).

For these reasons, the FAC does not state an Eighth Amendment claim. The Court previously advised Plaintiff of these deficiencies. (*See* Order Dismiss Compl. 8–9.) If Plaintiff includes a claim regarding the treatment he receives in prison and/or the conditions of confinement in any amended complaint, he must correct these deficiencies or face dismissal of his Eighth Amendment claim.

## B. If Plaintiff Fails to Plead a Federal Claim, the Court will Decline Supplemental Jurisdiction Over Plaintiff's State Law Claims.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental jurisdiction, a court considers "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997).

As Plaintiff has failed to plead a federal claim, the factors weigh against exercising supplemental jurisdiction over Plaintiff's state law claims (negligence and violation of California Government Code Sections 815 and 830). As to judicial economy, the Court has expended minimal effort towards this case and has not engaged in substantive analysis of Plaintiff's state law claims that would need to be duplicated in state court. The convenience factor is neutral, weighing toward neither side, as both cases would be filed within the Central District of California's geographic boundaries. So too is the fairness factor, as a state court would be as fair as federal court. However, comity weighs strongly in favor of declining supplemental jurisdiction, as it is "preferable as a matter of comity (respect for our sister state institutions) for state court judges to apply state law to plaintiff's state-law claims." *Millar v. Bart Dist.*, 236 F. Supp. 2d 1110, 1120 (N.D. Cal. 2002). Balancing these factors, the Court should not exercise supplemental jurisdiction over Plaintiff's state claims where Plaintiff has failed to plead a federal claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise

jurisdiction over the remaining state-law claims.") (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

For these reasons, if Plaintiff does not sufficiently plead a federal claim, the Court will recommend declining supplemental jurisdiction over Plaintiff's state claims.

### C. The FAC Fails to Plead Any State Claims.

Even if the FAC had sufficiently pled a federal claim, the FAC fails to plead any state claims.

Before commencing a lawsuit against a California state or local public entity or its employee based on tort liability or for any claim for money or damages, the Government Claims Act requires a plaintiff to first present a written claim to the public entity. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *see also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). Claims for personal injury and property damages must be presented within six months after accrual; all other claims must be presented within one year. *City of Stockton*, 42 Cal. 4th at 738. A plaintiff cannot file a lawsuit until the written claim has been acted upon, or deemed rejected, by the board of the public entity. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[S]ubmission of a claim to a public entity pursuant to [the Government Claims Act] 'is a condition precedent to a tort action and the failure to present the claim bars the action.'" *Id.* at 1240 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989)); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (holding that plaintiff's pendent state law tort claims against both the individual and public entity defendants are barred unless he presented them in compliance with Government Claims Act before filing suit). "A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for

noncompliance exists." *Gong*, 226 Cal. App. 4th at 374; *see also Bodde*, 32 Cal. 4th at 1243 ("[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action.").

The FAC does not allege that Plaintiff presented any potential state claims in compliance with the Government Claims Act, or that he was excused from the claim presentation requirement. Thus, the FAC does not sufficiently plead any state law claims. The Court previously advised Plaintiff of this deficiency. (*See* Order Dismiss Compl. 12–13.) If Plaintiff includes any state law claims in any amended complaint, he must state facts showing that he presented or was excused from presenting his claim in accordance with the Government Claims Act, or face dismissal of his state law claims.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the FAC **WITH LEAVE TO AMEND**. Although highly doubtful that Plaintiff could amend the FAC to overcome the deficiencies explained in this order, Plaintiff may have **one final opportunity** to amend and cure the deficiencies given his *pro se* prisoner status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Second Amended Complaint ("SAC"), or (2) advise the Court that Plaintiff does not intend to file a SAC.

The SAC must cure the pleading defects discussed above and shall be complete in itself without reference to the FAC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the SAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the FAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a SAC, or timely advise the Court that Plaintiff does not intend to file a SAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g). Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that this Court's determination herein that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if

Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: December 18, 2019

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE